**RAMLO LAW**
Kurt Ramlo (SBN 166856)
15021 Ventura Blvd. #544
Los Angeles, CA 91403
RamloLegal@gmail.com
Telephone: (310) 880-9208

Attorney for Creditor Matthew Peridis

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>Christopher Scott Ford,<br><br>Debtor. | Case No. 2:26-bk-12720-NB<br>Hon. Neil Bason<br><br>Chapter 13<br><br>**Updated Objection to Debtor's Proposed Chapter 13 Plan and Declaration of Matthew Peridis**<br><br>Hearing Date: October 15, 2026<br>Hearing Time: 9:30 a.m.<br>Courtroom: 1545 Floor: 15th<br>Via ZoomGov Video<br>Via ZoomGov Telephone |

**RAMLO LAW**
Kurt Ramlo (SBN 166856)
15021 Ventura Blvd. #544
Los Angeles, CA 91403
RamloLegal@gmail.com
Telephone: (310) 880-9208

Attorney for Creditor Matthew Peridis

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>Christopher Scott Ford,<br><br>Debtor. | Case No. 2:26-bk-12720-NB<br>Hon. Neil Bason<br><br>Chapter 13<br><br>**Updated Objection to Debtor's Proposed Chapter 13 Plan and Declaration of Matthew Peridis**<br><br>Hearing Date: ~~August 6, 2026~~<br>Hearing Time: 9:30 a.m.<br>Courtroom: 1545 Floor: 15th<br>Via ZoomGov Video<br>Via ZoomGov Telephone |

Creditor Matthew Peridis respectfully objects to the Debtor's proposed Chapter 13 plan (DE 2, filed 3/23/26, (the "**Plan**"), as follows:

**A. The Debtor Has Not Proven that the Plan is Proposed in Good Faith or that the Petition Was Filed in Good Faith.**

The Debtor and creditor Matthew Peridis are parties to a Judgment of Dissolution (attached as Exhibit A) that divided up their marital property. To equalize the division of property, the Judgment required the Debtor, who would receive value in excess of the value received by Paridis, to make monthly equalizing payments to Paridis in the aggregate amount of $250,000. The Debtor received a release from any liability on a $367,000 loan obtained for his separate property

business. The Debtor's release was obtained by Peridis through his refinancing and assumption of the business loan. The Debtor was also entitled to receive about $150,000 for his community property interest in the appreciation of their jointly owned property toward the end of the marriage. When combined with all of the other property received by each spouse and the assignment of all debts to one or the other spouse, the parties agreed to the $250,000 of equalizing payments. (Decl. of Paridis ¶¶ 4, 20-23, 34-36.)

The standards used to determine lack of good faith in filing a Chapter 13 petition or proposing a Chapter 13 plan are generally applicable to each both. *See In re Eisen,* 14 F.3d 469, 470 (9th Cir. 1994). A Chapter 13 debtor bears the burden to prove that the petition was filed and that the plan was proposed in good faith. That burden is "especially heavy" when a Chapter 13 superdischarge is sought. Although determining whether good faith exists requires consideration of the totality of the circumstances, case law has established that bad faith exists where the debtor files a petition or proposed plan only with the intention to defeat state court ligation, *see In re Leavitt*, 209 B.R. 935, 939-40 (B.A.P. 9th Cir. 1997), to superdischarge an otherwise nondischargeable debt, *see In re St.*, 55 B.R. 763, 765 (B.A.P. 9th Cir. 1985) (seeking to discharge an otherwise nondischargeable debt is relevant factor to be considered in determining whether plan proposed in good faith); *In re Brock*, 547 B.R. 167, 168-70 (Bankr. S.D. Cal. 1985) (denying confirmation); *cf. In re Welch*, 711 F.3d 1120, 1131-33 (9th Cir. 2013) (social security payments excluded from disposable income not considered under good faith analysis), or to provide exceedingly small distributions under the proposed plan without full disclosure including whether more distributions could be made, *In re Strong*, 661 B.R. 638, 651-52 (Bankr. C.D. Cal. 2024).

The Plan proposes to pay administrative expenses and the priority portion of a single claim filed by the IRS. The remaining non-priority claims receive virtually nothing other than $38 to be split among $641,219.92 ion claim over three years. In other words, $1 of each monthly payment of $475 will go to non-priority unsecured creditors.

As detailed in the Peridis declaration, it does not appear that the Debtor disclosed all of his assets. He spent no less than $696,848 on luxury items such as Louis Vuitton bags, purses, duffle bags, and other luxury clothing, shoes, and watches from January 2020 through January 2023.

(Peridis Decl. ¶¶ 16, 36-39.) The schedules and statement of financial affairs suggest in places that the Debtor is engaged in business as an unincorporated sole proprietor, but he incorporated his business with the name “BLHW, Inc.” But in other places, he contends that he is employed by “Butter Love and Hardwork” or “BLHW” but without mention of BLHW, Inc. (Paridis Decl. ¶¶ 8-9, 15, 40-41, 43-44.) The Chapter 13 Trustere’s plan objection (DE 21, filed 6/9/26) requests the issuance of a payroll deduction order, but the papers do not disclose who the order would be served on. There is a lack of clarity in the papers or perhaps failure or refusal to disclose everything.

The Judgment of Dissolution is a nondischargeable marital property division settlement debt in a Chapter 7 case. 11 U.S.C. § 523(a)(15). The obvious purpose of the plan and the petition is to superdischarge Peridis’ claim for $437,907.43 plus ongoing legal expenses, after already having received the valuable benefit of being released from his obligation for the $367,000 business loan including his reimbursement obligation to Peridis who was only a co-signer on the loan. Given that the loan proceeds did not go to Peridis, his co-signing the note accorded him with the reimbursement rights of a guarantor against the principal obligor. Without those equalizing payment, Peridis will be harmed. (Paridis Decl. ¶ 45.)

The plan relies on two sources of income: a business that was losing about $28,000 a month during the six months before the petition month and “family support payments” from an unidentified source, for an unidentified purpose, and without any information about the probability of receiving those family support payments for the duration of the plan. These payments look more like the Debtor borrowing money to purchase himself a superdischarge of the almost half million dollars owed to Peridis.

The Debtor seeks to take advantage of the expanded Chapter 13 discharge designed to encourage debtors to use Chapter 13 to make greater distributions to their creditors than what they would receive in a Chapter 7 liquidation. Given the lack of any distributions to non-priority creditors, the petition and proposed Plan are intended to interfere with the Judgment of Dissolution and show lack of good faith.

**B. The Debtor Has Not Proven that the Proposed Plan Is Feasible.**

The Debtor discloses that his business does not provide him with any net income or profit (whether as a sole proprietorship or as a separate corporation). He contends that the expenses of his business are twice those of its revenue. His sole source of funds for the plan come from $6,000 a month that he lists on Schedule I as family support payments, including alimony, spousal support, maintenance, divorce settlement, or property settlement. .

The Plan is not feasible.

1. The Debtor cannot fund the losses he contends averaged about $28,000 a mont40h during the six months before the March 23, 2026 petition date. There is no explanation for how the business survived those six months or will survive in the next five years. Who is going unpaid by the business? Who is funding the business' losses? Why? There is no explanation about how the Debtor can fund the proposed plan payments when his creditors presumably will stop supplying goods or services to his business because they are not getting paid.

2. The Debtor lists $6,000 a month in family support payments, but Peridis, his ex-spouse, is not required to make family support payments and he does not do so voluntarily. There is no detail about those payments to determine whether they are enforceable or certain to arrive.

The Plan is therefore not feasible.

**C. The Plan Fails to Provide for a 5-Year Commitment Period.**

The Debtor's revised *Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period* and new *Chapter 13 Calculation of Your Disposable Income* demonstrate that the Plan must have a 5-year commitment period, but the Plan has not been amended.

**D. The Debtor Fails to Demonstrate that the Proposed Plan Satisfies the Best Interest of Creditors Test.**

As noted above, the papers do not disclose the status or value of BLHW, Inc. and do not disclose the status or disposition of the more than half million of luxury goods and items purchased by the Debtor. The bare assertion that creditors would receive nothing in a hypothetical chapter 7 is not creditor or reliable.

**E. The Debtor Has Not Demonstrated Compliance with Tax Requirements.**

As noted previously, the Debtor had not filed tax returns with the Internal Revenue Service or the Franchise Tax Board for tax years 2021, 2022, 2023, 2024, and 2025, although he indicated that he intended to file returns for 2024 and 2025 by June 1, 2026. *See* FTB Proof of Claim (No. 1-1, filed 3/27/26); IRS Proof of Claim (No. 2-1, filed 4/2/26); Debtor's *Declaration re Filing of Tax Returns* (DE 13, filed 4/23/26). To the undersigned's understanding, the Debtor has not filed the requested tax returns with the Court.

Confirmation of the Plan cannot occur in these circumstances, even if he files the 2024 and 2025 returns seven days before the rescheduled 341 meeting or before the confirmation hearing. *See* 11 U.S.C. § 1308(a) (requiring tax returns for 2022, 2023, 2024, and 2025 be filed with IRS and FTB by day before **initial** 341 meeting); § 1325(a) (permitting confirmation if debtor complies with § 1308(a); § 1307(e) (requiring dismissal or conversion, if party or UST requests, for failure to file a tax return under § 1308); LBR 3015-1(c)(3) (allowing submission to trustee of most recent tax return at least seven days before initial 341 meeting to prove current income); LBR 3015-1(4)(c) (requiring submission to trustee of most recent tax returns, up to two years, if debtor is a self-employed business without employees (Debtor apparently contends that his catering business from October 2025 to the present is different than his catering business from 2016 to September 2025 despite identical names – SOFA 27 (DE 1, filed 3/23/26)); LBR 3015-1(5)(e) (requiring submission to trustee of most recent tax returns, up to three years, if debtor is a self-employed business with employees).

Dated: August 6, 2026

**RAMLO LAW**

By: *_/s/ Kurt Ramlo_*
Attorney for Creditor Matthew Peridis